Thank you, Your Honors, and may it please the Court, my name is Colleen Rameh and I am a lawyer and I'm going to be talking about the criminal conviction and sentence, well his judgment really. As this Court has held, a written judgment that conflicts with an unambiguous oral pronouncement of sentence is a nullity, requiring no further discussion. Something cannot simultaneously be a sentence and a nullity. Thus, logically, to determine whether a defendant's appeal from a written judgment is properly considered an appeal of his sentence, or the imposition of his sentence, and therefore properly barred by a valid appeal waiver, we submit that the Court must first determine whether the judgment merely clarifies an ambiguous oral pronouncement of sentence, or conflicts with an unambiguous oral pronouncement of sentence, and is therefore a nullity, and not as the government submits part of his sentence. In this case, the district judge recognized Mr. Tancil's significant and substantial cooperation with the government, cooperation that took more than two and a half years to complete. Mr. Tancil was indicted in this case in November of 2013, and was only sentenced in March of last year. But he was serving a state, it's not like he was in federal custody awaiting trial, he was serving a state sentence during that period between 2013. Yes, he was, although he was writted into federal custody from state custody. But isn't that the whole controversy of what that means? He was still in state custody technically, right? Certainly, and according to the Bureau of Prisons and the way that the Bureau of Prisons executes the sentence, we're not here today arguing that the Bureau of Prisons is miscalculating his sentence as it is reflected in the judgment. However, at sentencing, everyone in the room appears to have agreed that Mr. Tancil's concurrently, you know, everyone agreed that it should be imposed concurrently, his federal sentence to a state sentence. Going forward. Well, everyone agreed that it should be concurrent. And then when it was brought up, like what about the basically the five plus years that this federal case has been pending, the judge reflected that he understood that Mr. Tancil would get credit for that time against his federal sentence. The government told the judge he thought it was automatic. Then the judge clarified that I think it depends on the date he was written into federal custody from the state. So we're not here arguing that the judge intended to impose a concurrent sentence back before the federal case began. But everyone, the judge made it clear that he intended that the federal sentence effectively start running as of November 19th of 2013. Do you agree with the government that he would have, if he had really wanted to achieve that end, 5G in the sentencing guidelines was the route? I agree that 5G of the sentencing guidelines is the most sure way of affecting that sentence. So he would have had to give an entirely different sentence that was reduced to account for that time. I agree. I think that if you want to do everything by the letter, that is the most appropriate way of affecting the sentence that the judge intended. So he made a mistake. He was mistaken about the date that he went into custody or mistaken about BOP's calculation. He said BOP was going to calculate it, right? He said that the BOP will determine that. But everyone agreed that the date, I believe that when reading the sentencing transcripts, it's clear that everyone in the room believed he would be getting that credit by the BOP. And so if someone had understood better the way that BOP credits sentences and time already served, and had brought up this problem that has now been identified on appeal with the way that the BOP credits sentences or credits time that has been used or has been credited towards a state sentence in this case, then this discussion and the idea that resort to 5G of the sentencing guidelines was necessary could have been explored and discussed. But the judge made a guidelines error. There would be no question that the appeal waiver applied. So I guess what I'm trying to figure out here is you're saying essentially that the judge was mistaken about when he was written into federal custody. He was mistaken about that date. And so I'm trying to figure out if there's a reason why. The judge actually wasn't mistaken about the date he was written into federal custody. He's mistaken about the way to implement the sentence he intended to give. The judge made it clear that his intent was that he received 216 months beginning in November of 2013. There's really no other way, in my opinion, to read the transcript of the hearing. So the dispute is when did the concurrency begin? Correct. And you say it's November 19th of 2013. Yeah, yeah, yes. And then, yeah, I have that written here. So it's November 19th. That's when he mentions, at least, that he wants this to run concurrently. But does the concurrence begin when that? Because the state sentence is already being served. Sure. For some period of time. Sure. And so he recognizes both of those. Now, if he's saying that this is when he's, what do they call it, when he's what in? Writted into federal custody. When he's writ. Thank you. Because he's writted in. Sure. But I know what writting does to the status of the prisoner. And I believe that that's the fundamental misunderstanding in this case as to what the effect of that writting is. So it's what did the judge intend when he said that? The judge intended that he said, I understand that this is the agreement of the parties, that he be given credit against his federal sentence for this time. And that is my intent, that he be given credit. The bottom line is I believe that. That was part of the plea bargain you're saying? The plea bargain considered. That the plea bargain said that he gets that five years? The plea bargain didn't say, the text of the plea bargain is not clear on that point. It says that the government will recommend a concurrent sentence. But the government at sentencing said absolutely. He agreed that he should get credit for that time. And then he told the judge, I believe it's automatic that he'll be getting credit for that time. The prosecutor was wrong. So it would be a different case, right, if he had the appeal waiver and the plea agreement, but the sentence was contrary to the agreement. But that's not your position. You're saying it was unstated? It was unstated in the text of the plea agreement. The plea agreement simply said that the government would recommend concurrent time. So it's not clear. Everyone at the hearing, including Mr. Tansel, including counsel for Mr. Tansel, including the government, including the court, thought that he was going to be getting credit for this five years, over five years. I guess I disagree with you about that. Reading the sentencing transcript, I think it's unclear. But I don't think it's clear that they all thought that he was getting that backdated credit. The judge said, this is my intent, and I will make sure that the judgment and commitment order reflects that. But it wasn't totally clear to me what his intent was, right? Like he did want to make sure he got credit for the time in federal custody, but it wasn't clear about what he thought about the starting date of that. Well, given that he cited to the specific date that he intended the sentence to run on, I would have to disagree. I'll save my minute for rebuttal. Ms. Whalen. May it please the court. Nathaniel Whalen here on behalf of the United States of America. Your Honors, the threshold question is whether this appeal should be dismissed or not. Mr. Tansel pled guilty to being engaged in a conspiracy and committing a murder. In exchange for that, he got a lot of benefit from the government. He also agreed not to appeal a sentence or the manner in which his sentence was imposed. I think, Judge Barrett, you said to defense counsel that the judge would have to give an entirely different sentence for Mr. Tansel's argument to prevail. But, Mr. Whalen, is it true, is the defendant correct, that it was the party's understanding, even if not reflected in the text of the plea agreement, that he was going to get that credit from November of 2013? Your Honor, that's not clear to me on the transcript. What's clear to me is that, I read it the same way Your Honor does, is that it's unclear. What's the resolution for this? Should this be sent back for the judge to clarify what he meant? Well, no, Your Honor. The resolution the defendant seeks is this court to take 216 months on the written judgment, cross that out, and write 141 months. That's the remedy that they're seeking in their reply brief. And if you look at the last full paragraph on the reply brief, they say, the clearest mechanism by which the district court can implement the incentives imposed would be to impose a 141-month term of imprisonment. And you're saying that's what we should decide? Your Honor, that's what the district court decides. I'm only looking at it, I don't want to say this is a practical solution. Maybe it would at least be better if we gave the judge a chance to say exactly what he meant on November 19, 2013. Yeah, and Your Honor, I think without the plea agreement, that might be an appropriate resolution to this case. But the defendant and the government entered into a binding agreement where the defendant said he wouldn't appeal a sentence or the manner in which it was imposed. And there's a carve-out for ineffective assistance of counsel claim. So the parties have agreed if there's a problem with what the district court did, there's a mechanism for resolving that. And that's in the 2255 motion. But Mr. Whelan, how could ineffective assistance of counsel? Let's put aside the particular facts of this case. What if a judge gives an oral sentence of four years and there's some colossal screw-up and it turns out that when the written judgment comes out, it says eight? Sure. That's not ineffective assistance of counsel, right? But there's been a plea waiver. How can you correct that? There's a 35A motion that you could file within 14 days of the oral imposition of the sentence. And he didn't file that here because he thought BOP was going to count it differently? I don't know why he didn't file it here, Your Honor. He did have a notice of appeal on file already within the 14 days. And so to me it's clear he was going to appeal something. I don't know that he was going to appeal this issue. So you think that he could have made a Rule 35 motion if he had a problem with it or if he thought it was in conflict with the oral? Well, what he says in his opening brief, and I have no reason to dispute this, is the BOP didn't make that determination until after the 14-day period. Right. And so in this case, the appropriate resolution would be in the 2255 motion. But in Your Honor's hypothetical where there's an oral imposition of four years and then the written judgment says eight years, that's clear on the record as to a clear discrepancy between the oral statement and the written statement. So that's something that could easily be resolved in a Rule 35 motion. Here the problem is it's not clear on the record what the district court intended as it relates to that period between. I'm just worried about the plea waiver thing. It seems to me this would be an entirely different case and it would be easy to send it back for the judge to make clear what he meant on the record absent the plea waiver. But I'm just a little bit concerned about taking away a defendant's ability to plea, a deviance between an oral sentence and the written judgment. Well, Your Honor, respectfully, you aren't taking it away. It's the defendant who's already bargained that away. And he got a lot of benefit for his bargain. He got a cap sentence of 30 years. He got a 5K motion. He got the potential for below the mandatory minimum sentence. He got the government's recommendation that it run concurrent to a state sentence where he attempted to kill his girlfriends. And he got the government on his side in this case, and that's a benefit that the defendant entered into knowingly, voluntarily. And Judge Simon was very clear at the Rule 11 colloquy where he said, listen, if I get anything, and I'm paraphrasing here, if I get anything wrong, you're stuck with it. Yes, you have an ineffective assistance of counsel claim, but you're stuck with it. And the defendant said, I understand that, and I want to go forward with the plea agreement. And the plea agreement in this case is that he would not appeal a sentence or the manner in which it was imposed. I don't know what this is if it is not an appeal of a sentence. He's saying the actual number on the judgment is wrong. 216 months is wrong, and this court should put one point on it. Because Judge Simon made a mistake about how he could account for this. It was kind of a guidelines error in a way because he didn't use guideline 5G if that was the most effective route to giving him that credit. If there was a mistake. Yeah, I know. I agree. I agree. The problem with defendant's position is defense got up here and said, the written judgment's a nullity if it conflicts with the oral pronouncement. And so that requires the court to then do a merits analysis to figure out whether there's a conflict before it determines whether the waiver applies. And this court's been reluctant to do that, what it calls circular reasoning, and saying, well, let's figure out if you have a meritorious claim. If you don't, we'll enforce the waiver. If you do, we'll bypass the waiver. We'll carve it out. And I think that that's the correct approach. I don't think you should put the cart before the horse when it comes to these waivers. But even if you did bypass the waiver, the problem for defense is that you have to show that the court's oral statements are clear and unambiguous, and they clearly and unambiguously conflict with the written judgment. This record is not clear and unambiguous that Judge Simon intended to impose a 141-month sentence. And what the judge said on page 25 of the sentencing transcript is, I think it depends on when he was written into federal custody from state court 2, but that will be up to the BOP Bureau of Prisons to actually calculate. Judge Simon is a very experienced judge, and he understands that these BOP calculations, good time credit calculations, are extremely complex. And that's why typically we get up there and we say, Judge, you can't really predict the way the BOP is going to calculate. As I read the sentencing transcript, Judge Simon is saying, BOP is going to figure this out. I intend you to get as much as you possibly can, Mr. Tanzel, as much credit as you possibly can, but ultimately the BOP is going to be the final arbiter. And that is the law. The law is that the BOP is going to be the one who makes this calculation. Is that a delegation? No, Your Honor, it's not a delegation. It's a statutory provision. It's 18 U.S.C. I don't want to get this wrong, Your Honor, 3585B, which says it's the BOP that's going to determine good time credit, but the BOP can't give you credit for time you're already getting credited towards another sentence. So this five-and-a-half-year period from March 2013 until the sentencing on March 2019, I'm sorry, November 2013 until March 2019, he was getting credit towards the state sentence. But that's always going to be the case if something's going to be concurrent. It just depends when does it start. That's correct, Your Honor, but what the statute says is the BOP can't give you credit for that five-and-a-half-year period because you're already getting credit. What BOP can do is it can start giving – Well, you can't reduce the state sentence. They're not doing that when you talk about credit. It's a different crime. Correct. It is a different crime, and it wouldn't reduce the state sentence. It would have the effect of reducing the federal sentence. That's right. And the BOP certainly can make it concurrent going forward from the date of sentencing. The judge can't sit there in sentencing in March 2019 and say, listen, I'm giving 216 months, and I want that to start in November of 2013. You say that he can't do. He cannot back date a sentence. Under precedent and the statutes, and I think defense got up here and said they're not arguing the judge intended to impose a back date of sentence. The judge just can't say my federal sentence is starting six years ago because the sentence begins at the date of sentencing. The only question I have is what do you mean then when he said it? Then? I'm sorry. Then when he said he wants to do something about being concurrent. Your Honor. This is before he was five years later that he gets a sentence. That's correct, Your Honor. And so he does have a concurrent sentence going forward from that March 2019 date. So Mr. Tansel is going to have a concurrent sentence if he's correct about his release date from state court, and I have no reason to dispute that. He says he's getting out in November of 2024. And so five and a half years of his federal sentence is going to be concurrent with his state sentence. And then after that it becomes an exclusively federal sentence, assuming he gets out when he says he was going to. And that's what the judge meant when he said it was going to be concurrent. It was going to be concurrent going forward from the date of the federal sentencing. And that's, I believe, what the parties agreed to. The plea agreement, and this is paragraph 7E, Roman numeral 4, is the United States of America recommends the court impose a sentence to run concurrent with the state of Indiana sentence previously imposed in cause number, and then it gets the cause number. There wasn't a discussion about this period between when he was brought over into federal custody. Just if I may make one last point, Your Honors, which is there's no dispute under this court's case law that when you're writ it over under this writ of, and I'm not going to butcher the Latin name, but when you're writ it over, you're not actually in federal custody for BOP calculation purposes. You're still in the state's custody, and that's why he was able to get credit towards the state sentence. You know, physically you were in the custody of the marshals because they're the ones in charge of you, but in terms of prison calculation, in terms of prison time calculation, you are in the custody of the state. So until whatever it is, May 27, 2016, he was in the custody of the state. Is that right? No, Your Honor, until March 2019 when he's sentenced federally, he was in the custody of the state. The May 16 date is the date he pled. Okay. Thank you. There are a lot of dates floating around here, Your Honor. They're right here together. That's my problem. Right. Unless this court has any further questions. Mr. Whalen, could a district judge make inquiry on a specific fact situation, as we have here, of the BOP before entering final judgment on what the calculation would be? I mean, I've never encountered it, and I don't know if you have. So my experience has been that the district court judge will occasionally say, how is the BOP going to calculate this going forward? Because of the complexity and the issues involved, our typical answer is, judge, we don't know. We can't say. It would be great if we could tell you, but there are factors that come into play that we can't necessarily figure out. So if this were a case where the party's intent were to impose this 141-1 sentence, the appropriate thing, which defense points out, would be to say, judge, if you honestly believe that he should get these six-year credits, the only way to ensure that will happen is to give the 141-1 sentence and then on the judgment note that you're reducing it pursuant to 5G1.3. I don't know if a district court judge has inquired of the BOP before as to how they would calculate it. I'm sure they could. I just don't know if BOP could give them the correct answer. You know, BOP would probably say, you're asking us to speculate, and we can't do that yet. So unless this court has any further questions, we would ask that you dismiss pursuant to the waiver or alternatively affirm the written judgment. Thank you. Thank you, Mr. Helland. Ms. Romney? Ms. Romney, you may have an additional minute. Thank you, Reuters.  Thank you, Mr. Helland. Mr. Tansel, while he certainly bargained away some of his rights under the appeal waiver, he did not bargain away his right to be president sentencing. Taken to, you know, its logical conclusion, the government's argument is that if Mr. Tansel had not been brought over from custody, his counsel hadn't been there, and the judge had held a hearing with the government and imposed a sentence that he would have no right to contest the sentence or the imposition thereof. He clearly did not bargain away his right to be president sentencing. The fact that the written judgment materially changes the amount of time he's going to have to spend in custody from what the judge explicitly ruled in the sentencing hearing is effectively taking away this right to be president sentencing in absentia. Going back to clarify one of the questions that the court had was that Mr. Tansel did not know within 14 days how the BOP was going to calculate his sentence. In fact, I had to explicitly contact the marshals and have them send the information to the BOP to even get the BOP to calculate his sentence, and that happened well after I was appointed and after the 14-day period had elapsed. Finally, we would be more than happy for this court to send this back to the district judge to get clarification on. I mean, I believe that the sentencing transcript is clear as to what the judge intended, but if this court is concerned about whether or not the judge really would want to give a departure under 5G 1.3 since it did never come up at sentencing, I don't believe that that makes the court's intent any less clear. It just makes the mechanism by which it would happen less clear. If that is something that the court really does not think, the district court really does not want to do, we would be happy to send this back for the court to clarify what they intended. Unless the court has any further questions, I appreciate your time today. Thank you, Mr. Allen. The case is taken under advisement.